**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **CAROLYN HIXON** and **JOHN HIXON**, | ) ) ) | |
| Plaintiffs, | ) ) | |
| vs. | ) ) | 2:09cv655 **Electronic Filing** |
| **ADULT PROBATION AND PAROLE DEPARTMENT OF THE COUNTY OF FAYETTE**; **FAYETTE COUNTY**; and **PROBATION OFFICER JAMES WILLIAMS**, individually and as an Officer of the County of Fayette and the Adult Probation and Parole Department, | ) ) ) ) ) ) ) ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION**

January 27, 2011

**I.    INTRODUCTION**

Plaintiffs, Carolyn Hixon ("Mrs. Hixon") and John Hixon ("Mr. Hixon")(collectively "Plaintiffs"), filed the instant action pursuant to 42 U.S.C. § 1983, alleging violation of Mrs. Hixon's rights under the First, Fourth and Fourteenth Amendments to the Constitution of the United States, as well as several causes of action under state law, against Defendants, Adult Probation and Parole Department of the County of Fayette ("Probation"), Fayette County (the "County") and Probation Officer James Williams ("Williams")(collectively "Defendants"). Defendants have filed a Motion for Summary Judgment, Plaintiffs have responded and the matter is now before the Court.

1

Defendants have filed a Concise Statement of Material Facts in support of their motion for summary judgment. The Local Rules of the United States District Court for the Western District of Pennsylvania require that Plaintiff file a responsive "concise statement which responds to each numbered paragraph in the moving party's Concise Statement of Material Facts by . . . admitting or denying whether each fact contained [therein] . . . is undisputed and/or material . . . setting forth the basis for the denial if any fact . . . is not admitted in its entirety (as to whether it is undisputed or material), with appropriate reference to the record . . ." *See* LR 56.1(C)(1)(a) & (b). Material facts set forth in a moving party's concise statement of material facts will be deemed admitted for the purpose of deciding the motion for summary judgment "unless specifically denied or otherwise controverted by a separate concise statement of the opposing party." *See* LR 56.1(E). Plaintiffs in this instance have failed to file a responsive statement as required by the Local Rules.

## II. STATEMENT OF CASE

Alfred David Argiro III ("Argiro"), the grandson of Mrs. Hixon, resided with the Plaintiffs at 917 Pittsburgh Street, Scottdale, Pennsylvania 15683. Defendants' Concise Statement of Undisputed Material Facts ("Def. CSUMF") ¶¶ 2 & 3. On or about August 30, 2006, Argiro was placed on two (2) years' probation by the Court of Common Pleas of Fayette County for carrying a firearm without a license. Def. CSUMF ¶¶ 4 & 5. Williams was the probation officer assigned to supervise Argiro's probation. Def. CSUMF ¶ 6. As a condition of his probation, Argiro was required to submit to searches of his person, property, vehicle and residence by Probation without the issuance of a search warrant. Def. CSUMF ¶ 8.

On June 7, 2007, Williams and Probation Officer Melissa Troyan ("Troyan") appeared at

the Pittsburgh Street residence to conduct a probation inspection because they had reason to believe Argiro was involved in the distribution of illegal narcotics. Def. CSUMF ¶¶ 10-12. When they arrived, Argiro was sitting in the passenger seat of a vehicle parked in front of the Pittsburgh Street residence. Def. CSUMF ¶ 13. Williams approached the vehicle, asked Argiro to exit, then searched and handcuffed him. Def. CSUMF ¶ 14. Williams, Troyan and Argiro then entered the home and proceeded to Argiro's bedroom located in the basement. Def. CSUMF ¶ 15. Argiro remained seated in a chair in his bedroom during the search. Def. CSUMF ¶ 19.

Mrs. Hixon arrived home at approximately 4:30 p.m. and testified that she heard voices in her basement. Def. CSUMF ¶¶ 20 & 21. Mrs. Hixon went downstairs and observed Argiro, Williams and Troyan in Argiro's bedroom. Def. CSUMF ¶ 22. She attempted to question Williams about what he was doing there, but Mrs. Hixon contends that Williams refused to answer her. Def. CSUMF ¶ 24. Williams, however, testified that he thought Hixon was speaking to Argiro and did not believe Hixon spoke to him at all during the search. Def. CSUMF ¶ 25. Argiro testified that either he or Troyan identified the probation officers to Hixon. Def. CSUMF ¶ 26.

At one point during the search, Williams left the basement to go outside. Def. CSUMF ¶ 27. Shortly thereafter, Mrs. Hixon decided to leave the basement and go outside as well. Def. CSUMF ¶ 28. As Mrs. Hixon started up the stairs, she contends that Williams came running down the stairs and ran into her, knocking her into the wall of the stairwell. Def. CSUMF ¶¶ 32–35. Mrs. Hixon did not mention that she was injured, and Williams and Troyan finished the search of Argiro's room. Def. CSUMF ¶¶ 37 & 38.

### III.     LEGAL STANDARD FOR SUMMARY JUDGMENT

Pursuant to FED. R. CIV. P 56(c), summary judgment shall be granted when there are no genuine issues of material fact in dispute and the movant is entitled to judgment as a matter of law. To support denial of summary judgment, an issue of fact in dispute must be both genuine and material, *i.e.*, one upon which a reasonable fact finder could base a verdict for the non-moving party and one which is essential to establishing the claim. *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986). When considering a motion for summary judgment, the court is not permitted to weigh the evidence or to make credibility determinations, but is limited to deciding whether there are any disputed issues and, if there are, whether they are both genuine and material. *Id*.    The court's consideration of the facts must be in the light most favorable to the party opposing summary judgment and all reasonable inferences from the facts must be drawn in favor of that party as well. *Whiteland Woods, L.P. v. Township of West Whiteland,* 193 F.3d 177, 180 (3d Cir. 1999), *Tigg Corp. v. Dow Corning Corp.*, 822 F.2d 358, 361 (3d Cir. 1987).

When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). In the language of the Rule, the nonmoving party must come forward with "specific facts showing that there is a genuine issue for trial." FED. R. CIV. P 56(e).    Further, the nonmoving party cannot rely on unsupported assertions, conclusory allegations, or mere suspicions in attempting to survive a summary judgment motion. *Williams v. Borough of W. Chester*, 891 F.2d 458, 460 (3d Cir.1989) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)). The non-moving party must respond

"by pointing to sufficient cognizable evidence to create material issues of fact concerning every element as to which the non-moving party will bear the burden of proof at trial." *Simpson v. Kay Jewelers, Div. Of Sterling, Inc.*, 142 F. 3d 639, 643 n. 3 (3d Cir. 1998), *quoting Fuentes v. Perskie*, 32 F.3d 759, 762 n.1 (3d Cir. 1994).

**IV. DISCUSSION**

    A.    <u>First Amendment Claim</u>

Though not specifically stated, it appears that Plaintiffs contend that Mrs. Hixon was subjected to "unreasonable and/or excessive force" in retaliation for the exercise of her First Amendment right to question the Probation Officers regarding their search of Argiro's bedroom and property. To prevail on a First Amendment retaliation claim under § 1983, Mrs. Hixon must establish: (1) constitutionally protected conduct, (2) retaliatory action sufficient to deter a person of ordinary firmness from exercising his constitutional rights, and (3) a causal link between the constitutionally protected conduct and the retaliatory action. *Thomas v. Independence Twp.*, 463 F.3d 285, 296 (3d Cir. 2006) (citing *Mitchell v. Horn*, 318 F.3d 523, 530 (3d Cir. 2003). The Court finds it unnecessary to address the issue of whether Mrs. Hixon's inquiry to Williams constituted protected activity. In its resolution of this motion only, the Court will assume that Mrs. Hixon's speech was protected. As set forth below, the Court finds that Plaintiffs are unable to establish the second and third requirements.

The second requirement for establishing a First Amendment retaliation claim, is whether "the alleged retaliatory conduct was sufficient to deter a person of ordinary firmness from exercising his First Amendment rights." *Mckee v. Hart*, 436 F.3d 165, 170 (3d Cir. 2006)

(quoting *Suppan v. Dadonna*, 203 F.3d 228, 235 (3d Cir. 2000)); *see also Crawford-El v. Britton*, 523 U.S. 574, 589 n.10 (19980 ("The reason why such retaliation offends the Constitution is that it threatens to inhibit exercise of the protected right."). The determination of whether a plaintiff's First Amendment rights "were adversely affected by retaliatory conduct is a fact intensive inquiry focusing on the status of the speaker, the status of the retaliator, the relationship between the speaker and the retaliator, and the nature of the retaliatory acts." *Brennan v. Norton*, 350 F.3d 399, 419 (3d Cir. 2003) (quoting *Suarez Corp. Indus. v. McGraw*, 202 F.3d 676, 686 (4th Cir. 2000)). Courts, therefore, require "that the nature of the retaliatory acts … be more than de minimis or trivial." *Id.* (quoting *Suarez*, 202 F.3d at 686).

The retaliatory act in this instance is the alleged physical contact between Williams and Mrs. Hixon that occurred on the basement steps as Williams was re-entering the basement and Mrs. Hixon was beginning to walk up the basement steps. Mrs. Hixon contends that Williams bumped into and knocked her into the wall as he passed her on the stairway. She also complains that Williams failed to apologize, or in fact, say anything to her. Williams denies that he had any physical contact with Mrs. Hixon on the stairway. The Court is unable to find that such incident was anything more than accidental contact that was trivial or de minimis in a First Amendment retaliation context.

In *Hogan v. Twp. of Haddon*, 2006 U.S. Dist. LEXIS 87200 (D.N.J. Dec. 1, 2006), the District Court found that a town commissioner's claim that she was "elbowed" by another commissioner after a meeting was de minimis and not an act sufficient to deter a person of ordinary firmness from exercising their First Amendment rights. *Id.* at 33-34. "Such a minor disturbance or annoyance, however boorish or uncouth, does not rise to the level of a

constitutional deprivation. The Constitution protects rights and freedoms, but it does not enshrine a code of personal civility." *Id.* Similarly here, there is no basis to find that the alleged inadvertent contact between Williams and Mrs. Hixon was retaliatory. Nor is there any evidence that the contact was connected to Mrs. Hixon's questioning the presence of the Probation Officers. Accordingly, the Court finds that Plaintiffs are unable to establish the second and third elements required for proving a First Amendment retaliation claim.

### B. Fourth Amendment Claim

The Fourth Amendment to the Constitution provides, in relevant part, that: "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated. . . ." U.S. Const. amend. IV. Mrs. Hixon contends that Williams violated her right under the Fourth and Fourteenth Amendments to be free from unreasonable and excessive force. The United States Supreme Court has held that "all claims that law enforcement officers have used excessive force--deadly or not--in the course of any arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness standard,' rather than under a substantive due process approach." *Graham v. Connor*, 490 U.S. 386, 395 (1989). Therefore, the Fourth Amendment's reasonableness standard covers searches and seizures. *County of Sacramento v. Lewis*, 523 U.S. 833, 843 (1998). In the Fourth Amendment context, "the 'reasonableness' inquiry in an excessive force case is an objective one: the question is whether the officers' actions [were] 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Id.* at 397.

Initially, the Court must determine whether a seizure triggering Fourth Amendment

protection has occurred. A " 'seizure' triggering the Fourth Amendment's protections occurs only when government actors have, 'by means of physical force or show of authority, . . . in some way restrained the liberty of a citizen.'" *Id.* at 395 n.10 (quoting *Terry v. Ohio*, 392 U.S. 1, 19 n.16 (1968)). As the Supreme Court explained in *Brower v. Inyo County*, 489 U.S. 593 (1988):

> Violation of the Fourth Amendment requires an intentional acquisition of physical control. A seizure occurs even when an unintended person or thing is the object of the detention or taking, but the detention or taking itself must be willful. This is implicit in the word "seizure," which can hardly be applied to an unknowing act. The writs of assistance that were the principal grievance against which the Fourth Amendment was directed, did not involve unintended consequences of government action.

*Id.* at 596 (citations omitted). A seizure occurs, therefore, only when "there is a governmental termination of freedom of movement through means intentionally applied." *Id.* at 597.

There is no evidence in the record that Mrs. Hixon was either in custody or that her freedom of movement was restricted in any way. Mrs. Hixon testified that she went into the basement and sat in a chair outside of Argiro's bedroom while the search was in progress. No one questioned her or ordered her to remain in the basement. In fact, she indicated that she was on her way up the stairs when the alleged contact with Williams occurred. Without evidence of an intentional seizure, Mrs. Hixon's Fourth Amendment claim fails.

  C. <u>Fourteenth Amendment Claim</u>

Outside the search and seizure context, a free person who is injured as a result of police misconduct may prosecute a Section 1983 claim for violation of his or her substantive due process rights. *County of Sacramento v. Lewis*, 523 U.S. 833, 844 (1998). The Due Process Clause of the Fourteenth Amendment, in relevant part, provides: "[N]or shall any State deprive

any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV. "The touchstone of due process is protection of the individual against arbitrary action of government." *County of Sacramento v. Lewis*, 523 U.S. at 845 (quoting *Wolff v. McDonnell*, 418 U.S. 539, 558 (1974)). The Supreme Court has instructed that "only the most egregious official conduct can be said to be 'arbitrary in the constitutional sense.'" *Id.* at 846 (quoting *Collins v. Harker Heights*, 503 U.S. 115, 129 (1992)). Consequently, "the substantive component of the Due Process Clause is violated by executive action only when it 'can properly be characterized as arbitrary, or conscience shocking, in a constitutional sense.'" *Id.* at 847 (quoting *Collins v. Harker Heights*, 503 U.S. at 128).

In a due process challenge, the threshold question is whether the behavior of the governmental officer is so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience. *Id.* at 847. The due process guarantee, however, does not entail a body of constitutional law imposing liability whenever someone cloaked with state authority causes harm. *Id.* at 848. Accordingly, the Supreme Court has held that the "Constitution does not guarantee due care on the part of state officials; liability for negligently inflicted harm is categorically beneath the threshold of constitutional due process." *Id.* at 849; *Daniels v. Williams*, 474 U.S. 327, 328 (1986); *see also Davidson v. Cannon*, 474 U.S. 344, 348 (1986). Conduct, unjustified by any government interest, that is intended to injure, however, is the type of official action most likely to rise to the conscience-shocking level. *Id.* at 849. *See also Daniels v. Williams*, 474 U.S. at 331.

Here, we have no such conscience shocking conduct. Williams, while in the process of a lawful search of Argiro's residence and property, allegedly bumped Mrs. Hixon while

9

descending a stairway. Such incident does not rise to the level of a constitutional deprivation. Plaintiffs, therefore, have failed to show that Mrs. Hixon was in fact deprived of either a constitutional or federal statutory right. Plaintiffs' claims under § 1983 shall be dismissed against all Defendants.

        D.        <u>Related State Claims</u>

Plaintiffs' remaining state law claims are currently before the Court pursuant to 28 U.S.C. § 1367, which allows the Court to exercise supplemental jurisdiction over non-federal claims arising from the same case or controversy as the federal claims. *See DeAsencio v. Tyson Foods, Inc.*, 342 F.3d 301, 308 (3d Cir. 2003). Section 1367(a) provides: "in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy. . . ." 28 U.S.C. § 1367(a).  A district court, however, need not exercise supplemental jurisdiction in all cases, it may decline supplemental jurisdiction where it has "dismissed all claims over which it has original jurisdiction." *See* 28 U.S.C. § 1367(c)(3); *Growth Horizons, Inc. v. Delaware County. Pa.*, 983 F.2d 1277, 1285 (3d Cir. 1993); *see also United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966) ("If the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well.")

In light of our dismissal of Plaintiffs' § 1983 claims, and finding no extraordinary circumstances that would compel the exercise of supplemental jurisdiction, the Court declines to exercise supplemental jurisdiction over Plaintiffs' related state law claims.

## V. CONCLUSION

Based on the foregoing, the Court finds that there are no material facts in dispute, and Plaintiffs are unable to direct this Court to the portions of the record that support their claims under 42 U.S.C. § 1983, alleging violation of Mrs. Hixon's rights under the First, Fourth and Fourteenth Amendments to the Constitution of the United States. Further, the Court declines to exercise supplemental jurisdiction over Plaintiffs' related state law claims. Accordingly, Defendants' motion for summary judgment shall be granted. An appropriate Order shall follow.

s/ David Stewart Cercone  
David Stewart Cercone  
United States District Judge

cc: Kenneth M. Baldonieri, Esquire  
Suite 214  
121 N. Main Street  
Greensburg, PA 15601  

Marie Milie Jones, Esquire  
Meyer Darragh Buckler Bebenek & Eck  
Suite 4850, U.S. Steel Tower  
600 Grant Street  
Pittsburgh, PA 15219